<u>NOT FOR PUBLICATION</u>

<u>UNITED STATES DISTRICT COURT</u>
<u>FOR THE DISTRICT OF NEW JERSEY</u>

_____
                             :

PHILIP GETSON, D.O.,             :
                             :
       Plaintiff,             :
                             :           Civil Action No. 07-3509 (JAG)
           v.                :
                             :                 **OPINION**
STATE OF NEW JERSEY, ET AL.,   :
                             :
       Defendants.         :
_____:

<u>**GREENAWAY, JR., U.S.D.J.**</u>

        This matter comes before this Court on Defendants'[1] motion to dismiss Plaintiff Philip

Getson, D.O.'s ("Plaintiff" or "Getson") complaint ("Federal Complaint"), pursuant to FED. R.

CIV. P. 12(b)(6), based on the <u>Younger</u> abstention doctrine.[2]  <u>See</u> <u>Younger v. Harris</u>, 401 U.S. 37

(1971).  For the reasons set forth below, this Court will exercise its discretion to abstain, and this

_____

        [1] The movants are all defendants, namely, State of New Jersey, Anne Milgram, Stephen B. Nolan, Sharon Joyce, Esq., Sandra Y. Dick, Kathy Stroh Mendoza, Esq., Edwar Tumminello, William Roeder, New Jersey Board of Medical Examiners, Mary Blanks, M.D., Mahmood Cheema, M.D., George J. Chiechanowski, M.D., Ann C. Clemency Kohler, M.D., Mario A. Criscito, M.D., Karen Kriss, R.N., Jacqueline Degregorio, Esq., Bassam Haddad, M.D., Paul Jordan, M.D., Kathryn Lambert, D.O., Steven Lamazow, M.D., Paul Mendelowitz, M.D., Peter Nussbaum, M.D., Sindy Paul, M.D., Joseph Reichman, M.D., Debbie Salas Lopez, M.D, George Scott, D.P.M., D.O., William Stanley, M.D., Calvin Strand, M.D., Kevin Walsh, P.A., Daniel Weiss, Douglas Wheeler, Esq., New Jersey Office of Administrative Law, Joseph F. Martone, Sandra Desarno Hlatky and Peggy Harris (collectively, "Defendants").

        [2] "Abstention is a judicially created doctrine under which a federal court will decline to exercise its jurisdiction so that a state court or state agency will have the opportunity to decide the matter at issue."  <u>Heritage Farms, Inc. v. Solebury Township</u>, 671 F.2d 743, 745 (3d Cir. 1982).

case will be dismissed.

## I. BACKGROUND

On July 12, 2005, the Attorney General of New Jersey, on behalf of the New Jersey Board of Medical Examiners ("Board"),  filed an administrative complaint ("Administrative Complaint") against Dr. Getson with the New Jersey Office of Administrative Law, pursuant to N.J. STAT. ANN. § 45:1-21(c), (d) and (e).  (Compl. ¶ 23; Administrative Complaint, attached as Ex. A to Compl. [hereinafter "Ex. A"].)  The Administrative Complaint alleges that Dr. Getson committed multiple acts of negligence and gross negligence in his care of a number of patients, in violation of N.J. STAT. ANN. § 45:1-21(c), (d), (e) and (h) (Ex. A at 3-5); failed to supervise an advanced practice nurse, in violation of N.J. STAT. ANN. § 13:35-6.6 (Ex. A at 6-7); failed to maintain proper medical records for several patients, in violation of N.J. STAT. ANN. § 13:35-6.5 (Ex. A at 8-10); and improperly billed for his services, in violation of N.J. STAT. ANN. § 45:1-21(b) (Ex. A at 10-11).  The Administrative Complaint seeks the suspension or revocation of Dr. Getson's license to practice medicine and surgery in the State of New Jersey.  (Ex. A at 12.)

The Administrative Complaint is supported by an expert report, issued by Dr. Bernard L. Schapiro on April 7, 2003.  (Compl.  ¶¶ 20-21; Report to The State Board of Medical Examiners In re Dr. Philip Getson, D.O., attached as Ex. C to Compl. [hereinafter "Ex. C"].)  Dr. Schapiro reviewed Dr. Getson's medical records for nine patients and concluded that "[a] majority of the nine patient charts reviewed reflect multiple gross deviations as well as moderate deviations from generally accepted standards of medical care."  (Ex. C at 59.)

On November 10, 2005, Dr. Getson filed an answer to the Administrative Complaint. (Compl. ¶ 19; Answer to Administrative Complaint, attached as Ex. B to Compl. [hereinafter

"Ex. B"].)  The Board subsequently transferred the matter to the Office of Administrative Law so that an Administrative Law Judge ("ALJ") could conduct a hearing under the provisions of the New Jersey Administrative Procedure Act.  N.J. STAT. ANN. §§ 52:14B-1 to 52:14B-25.  See also, N.J. STAT. ANN. §§ 52:14F-1 to 52:14F-23.

In January 2006, Steven Lomazow, M.D., a member of the Board, spoke with Albert Talone,[3] D.O., a physician identified by Dr. Getson as his expert in the disciplinary proceeding. (Compl. ¶ 24; Letter from Alma L. Saravia (Plaintiff's prior attorney) addressed to William Roeder of the Board dated Jan. 23, 2006, attached as Ex. G to Compl. [hereinafter "Ex. G"].)  Dr. Getson alleged in his Federal Complaint that, during the conversation, Dr. Lomazow "made several derogatory comments about Dr. Getson and his practice, as well as making negative comments about Dr. Tallone [sic] for serving as an expert in the case."  (Compl. ¶ 25; Ex. G.)  In a letter dated January 23, 2006, Dr. Getson's prior attorney informed Deputy Attorney General Kathy Stroth Mendoza of the conversation.  (Compl. ¶¶ 26-27; Ex. G.)

Shortly afterward, but not later than February 8, 2006, Dr. Lomazow was recused from participating in any Board proceedings involving Dr. Getson.  (Compl. ¶ 32; Letter from Alma L. Saravia addressed to Assistant Attorney General Sharon Joyce dated Feb. 21, 2006, attached as Ex. H to Compl. [hereinafter Ex. H] and Letter from Sharon Joyce to Alma Saravia dated Mar. 13, 2006, attached as Ex. J to Compl. [hereinafter Ex. J].)

Dr. Getson alleged in his Federal Complaint that, on February 17, 2006, an unnamed

---

[3]  The record before this Court is inconsistent with respect to the spelling of Dr. Talone's name.  In the Federal Complaint, his name is spelled "Tallone," while in the exhibits attached to the Federal Complaint, his name is spelled "Talone."  Since one of the exhibits is Dr. Talone's expert report, this Court will use the spelling from the exhibits.

lobbyist telephoned Dr. Talone and told him that "a prominent elected official" knew that there was a problem between Dr. Lomazow and Dr. Talone.  (Compl. ¶¶ 31-32; Ex. H.)  Neither the lobbyist, the official nor the problem were identified.  (Id.)  Dr. Getson's prior attorney informed Assistant Attorney General Sharon Joyce of the telephone call in a letter dated February 21, 2006.  (Compl. ¶ 32; Ex. H.)

In a letter dated March 16, 2006, Ms. Joyce informed Dr. Getson that certain staff of the Board Office had contacted the other Board members who had planned on attending the meeting concerning Dr. Getson and confirmed that none of the Board members had spoken to Dr. Lomazow with regard to the substance of the matter involving Dr. Getson.  (Compl. ¶ 35; Ex. J.)  The letter also indicated that the issues raised in Dr. Getson's attorney's letters of January 23, 2006 and February 21, 2006 had been referred to the Division's Ethics Officer.  (Ex. J.)

The Office of Administrative Law scheduled the disciplinary hearing for March 25, 2007, which was subsequently rescheduled to August 7, 2007.  (Compl. ¶ 41; Notice of Plenary Hr'g, attached as Ex. M to Compl. [hereinafter Ex. M].)

On July 30, 2007, Dr. Getson filed the Federal Complaint alleging that the state disciplinary proceeding violated Dr. Getson's constitutional rights of due process under the Fourteenth Amendment of the Constitution of the United States; his civil rights under 42 U.S.C. §§1981 and 1983; and various New Jersey statutes, including the Administrative Procedures Act and the Civil Rights Act.  (Compl. ¶¶ 1, 246.)  In the Federal Complaint, Dr. Getson acknowledged the applicability of the Younger abstention doctrine, but argued that exceptions apply in this case.  (Compl. ¶¶ 19-21.)  Dr. Getson requests this Court to issue a declaratory judgment against Defendants, pursuant to 28 U.S.C. §2201; an injunction against Defendants,

pursuant to 42 U.S.C. §1983 and New Jersey Civil Rights Act §10-6-2; and a preliminary

injunction and a temporary restraining order[4] against Defendants, pursuant to FED. R. CIV. P.

65(a) and (b).  (Compl. ¶¶ 296-307.)

On November 27, 2007, Defendants filed a motion to dismiss Plaintiff's Federal

Complaint, pursuant to FED. R. CIV. P. 12(b)(6),[5] arguing that this Court should abstain from

hearing this case, pursuant to the <u>Younger</u> abstention doctrine.  (Defs.' Mot. to Dismiss Pl.'s

Compl.)  Plaintiff contends that bad faith prosecution and the extraordinary circumstance of bias

in the state disciplinary proceeding create exceptions to the <u>Younger</u> abstention doctrine.[6]  (Pl.'s

Mem. of Law in Opp'n to Defs.' Mot. to Dismiss the Compl. [hereinafter "Pl.'s Mem. of Law"]

───────────────

[4] The request for a temporary restraining order, pursuant to FED. R. CIV. P. 65(b), was withdrawn by Plaintiff as indicated in his letter to this Court dated August 2, 2007 because the state administrative proceeding before the ALJ had been adjourned until early 2008.  (Docket Entry No. 4.)

[5] During a telephone conference with this Court on June 11, 2008, Defendants conceded that the service of process was proper and they would no longer pursue the claim, pursuant to FED. R. CIV. P. 12(b)(5).  Therefore, the motion to dismiss, pursuant to FED. R. CIV. P. 12(b)(5), is deemed withdrawn.

[6] In his original motion seeking a temporary restraining order and a preliminary injunction, Plaintiff argued that three exceptions to the <u>Younger</u> abstention doctrine exist. However, Plaintiff's arguments with respect to two of these exceptions – irreparable injury and extraordinary circumstances – essentially conflate since they are both based on an alleged due process violation created by the alleged bias. The Supreme Court Of the United States has recognized two exceptions to the <u>Younger</u> abstention doctrine.  <u>Perez v. Ledesma</u>, 401 U.S. 82, 85 (1971) ("Only in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown is federal injunctive relief against pending state prosecutions appropriate.").  As such, Plaintiff's asserted exceptions of irreparable injury and extraordinary circumstances will be treated as one and are addressed under the heading of extraordinary circumstances based on bias.  Since this Court concludes that Plaintiff failed to allege bias sufficiently to support a claim of a due process violation, the question of irreparable injury based on such a violation need not be reached.

19, 23.)

## II. LEGAL STANDARDS

### A.      Motions To Dismiss Under Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007); see also In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397 (3d Cir. 2000) (stating that a complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim).

In reviewing a motion to dismiss, pursuant to Rule 12(b)(6), a court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record. Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998); see also 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 3d § 1357 (3d ed. 2007). "Plaintiffs cannot prevent a court from looking at the texts of the documents on which [their] claim  is based by failing to attach or explicitly cite them." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). "[A] 'document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" Id. (emphasis in original) (quoting Shaw v Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1964-65 (internal citations omitted); see also FED.

6

R. CIV. P. 8(a)(2).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Id. at 1965 (internal citations omitted).  "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'"  Kost v. Kozakewicz, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 2d § 1357 at 340) (2d ed. 1990).

A court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 (3d Cir. 1994); see also Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987).  The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail.  Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 n.8 (3d Cir. 1997).  "The defendant bears the burden of showing that no claim has been presented."  Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

## B.      Younger Abstention Doctrine

 "Since the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal

7

courts." Younger, 401 U.S. at 43.   The Third Circuit has found that "Younger abstention is only appropriate where the following three requirements are satisfied: (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims." Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 408 (3d Cir. 2005).  See also Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982).

Courts have applied the Younger abstention doctrine to state administrative proceedings in which important state interests are vindicated, so long as in the course of those proceedings the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim.  Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc., 477 U.S. 619, 627 (1986).  More specifically, the Supreme Court of the United States stated in Gibson v. Berryhill, 411 U.S. 564, 576-577 (1973), that "administrative proceedings looking toward the revocation of a license to practice medicine may in proper circumstances command the respect due court proceedings." Similarly, the Supreme Court of the United States has held that federal courts should refrain from enjoining attorney disciplinary proceedings initiated by state ethics committees if the proceedings are within the appellate jurisdiction of the appropriate state supreme court.  Ohio Civil Rights Comm'n, 477 U.S. at 627 (citing Middlesex County Ethics Comm., 457 U.S. at 432).

The Third Circuit has noted that the third requirement of Younger abstention "is satisfied in the context of a state administrative proceeding when the federal claimant can assert his constitutional claims during state-court judicial review of the administrative determination." Zahl v. Harper, 282 F.3d 204, 210 (3d Cir. 2002) (citing O'Neill v. Philadelphia, 32 F.3d 785, 792 (3d Cir. 1994)).

8

"Even if the necessary three predicates exist, however, <u>Younger</u> abstention is not appropriate if the federal plaintiff can establish that (1) the state proceedings are being undertaken in bad faith or for purposes of harassment or (2) some other extraordinary circumstances exist, such as proceedings pursuant to a flagrantly unconstitutional statute, such that deference to the state proceeding will present a significant and immediate potential for irreparable harm to the federal interests asserted." <u>Schall v. Joyce</u>, 885 F.2d 101, 106 (3d Cir. 1989) (citing <u>Middlesex County Ethics Comm.</u>, 457 U.S. at 435; <u>Younger</u>, 401 U.S. at 49-50, 53-54). "The very nature of 'extraordinary circumstances,' of course, makes it impossible to anticipate and define every situation that might create a sufficient threat of such great, immediate, and irreparable injury as to warrant intervention in state . . . proceedings. But whatever else is required, such circumstances must be 'extraordinary' in the sense of creating an extraordinarily pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation." <u>Kugler v. Helfant</u>, 421 U.S. 117,124-25 (1975).

### III. DISCUSSION[7]

**A.  <u>This Court May Properly Abstain from Exercising Its Jurisdiction Over Plaintiff's Federal Complaint Because the Three Requirements of Younger Abstention Have Been Satisfied</u>**

---

[7] Plaintiff argues that he should be entitled to discovery in order to identify facts to support his claims that exceptions to the <u>Younger</u> abstention doctrine exist. (Pl.'s Mem. of Law 8.) Plaintiff further argues that "[n]o matter how likely it may seem that the pleader will be unable to prove his case, he is entitled, upon averring a claim, to an opportunity to try to prove it." (<u>Id.</u> at 14.) These arguments misapprehend the principles underlying FED. R. CIV. P. 12(b)(6) and the case law interpreting that rule. That is, unless Plaintiff, at the pleading stage, articulates "enough facts to state a claim to relief that is plausible on its face," <u>Twombly</u>, 127 S. Ct. at 1974, a complaint should be dismissed. Plaintiff it not entitled to have unlimited, far-fetched inferences made in his favor. As such, in its analysis, this Court will only draw reasonable inferences from the facts asserted by Plaintiff.

Having presented the appropriate framework for this Court's consideration, this Court shall now turn to the facts here. Defendants argue that this Court should abstain from adjudicating this matter, pursuant to the Supreme Court of the United States' decision in Younger, 401 U.S. 37, because this case satisfies the three requirements of the Younger abstention doctrine and no extraordinary circumstances exist that justify the disruption of the state administrative proceedings by this Court. Plaintiff does not dispute that the three requirements of the Younger abstention doctrine are met, but contends that bad faith and the extraordinary circumstance of bias in the state administrative proceedings justify the application of the exceptions of the Younger abstention doctrine. Although the parties agree that the Younger abstention doctrine applies, this Court will briefly review the three factors.

In this case, the first requirement of the Younger abstention doctrine is satisfied because there is a pending state administrative proceeding that is judicial in nature. The state administrative proceeding in this case is being conducted before an administrative law judge, who will issue recommended findings of fact and conclusions of law after a hearing, pursuant to the New Jersey Administrative Procedure Act, N.J. STAT. ANN. §§ 52:14B-1 to 52:14B-25. See also, N.J. STAT. ANN. §§ 52:14F-1 to 52:14F-23. The New Jersey Board of Medical Examiners can adopt, reject or modify the findings of facts and recommended decision of the ALJ. N.J. STAT. ANN. § 52:14B-10(c). Dr. Getson has the right to appeal the Board's decision to the Appellate Division of the New Jersey Superior Court, pursuant to N.J. CT. R. 2:2-3(a)(2). "State administrative proceedings such as this have long been recognized as judicial in nature." Zahl, 282 F.3d at 209 (state disciplinary proceedings against Board-Certified anesthesiologist licensed by State of New Jersey are "clearly judicial in nature").

10

The second requirement of the <u>Younger</u> abstention doctrine is also met because regulation of the practice of medicine implicates an important state interest.  The Third Circuit has recognized that "New Jersey has a heavy and traditional interest in regulating the practice of medicine within its borders." <u>Zahl</u>, 282 F.3d at 210-11.  The state regulation of the medical profession is in the public interest; power to establish and enforce health standards "is a vital part of a state police power." <u>Id.</u> at 211 (citing <u>Brodie v. State Bd. of Med. Exam'rs</u>, 427 A.2d 104 (1981)).

Lastly, the third requirement of the <u>Younger</u> abstention doctrine is satisfied because the state proceedings afford Plaintiff an adequate opportunity to raise the federal claims presented to this Court.[8]  Getson can assert his constitutional and other federal claims in the state proceedings since "[a]dministrative law judges are clothed with ample authority to rule upon [constitutional] questions in their initial decisions." <u>Jones v. Dept. of Community Affairs</u>, 930 A.2d 477, 480 (N.J. Super. App. Div. 2007).  The Third Circuit has recognized that the third requirement of <u>Younger</u> abstention "is satisfied in the context of a state administrative proceeding when the federal claimant can assert his constitutional claims during state-court judicial review of the administrative determination." <u>Zahl</u>, 282 F.3d at 210 (citing <u>O'Neill v. Philadelphia</u>, 32 F.3d at 792).  Further, Plaintiff has the right of appeal to the Appellate Division of the Superior Court of New Jersey, pursuant to N.J. Ct. R. 2:2-3(a)(2).   That court is fully capable of reviewing Getson's federal constitutional and other federal claims.  Accordingly, the state proceeding in

---

[8] Plaintiff's Federal Complaint alleges that the state disciplinary proceeding violated Dr. Getson's constitutional rights of due process under the Fourteenth Amendment of the Constitution of the United States, civil rights under 42 U.S.C. §1983 and New Jersey Civil Rights Act §10-6-2.  (Compl. ¶¶ 1, 246.)

this case meets each of the prerequisites of <u>Younger</u> abstention.

**B.** **The Exceptions to Younger Abstention Do Not Apply Because The Complaint Did Not Allege Sufficient Facts Supporting The Existence of Bad Faith or Extraordinary Circumstances**

Conceding the applicability of the <u>Younger</u> abstention doctrine to this case, Plaintiff argues that his situation falls within the two exceptions to the <u>Younger</u> abstention doctrine.  First, Plaintiff argues that the state disciplinary proceeding was initiated in bad faith with no reasonable expectation of success.  Second, Plaintiff argues that a single communication between one Board member (Dr. Lomazow) and Plaintiff's expert (Dr. Talone) has so tainted the proceeding that the ensuing bias violates his constitutional right to due process, thus creating an extraordinary circumstance requiring federal court intervention.[9]

**1. Bad Faith Exception**

Plaintiff argues that the pending state disciplinary proceeding was undertaken in bad faith for the purpose of harassing him.  The bad faith exception applies in cases where there is evidence that the charges against the plaintiff were instituted "without any hope of ultimate success," but were brought instead only to discourage the exercise of the plaintiff's protected rights.  <u>Dombrowski v. Pfister</u>, 380 U.S. 479, 490 (1965) (holding that state prosecution of

---

[9] In reviewing a motion to dismiss, pursuant to FED. R. CIV. P. 12(b)(6), this Court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record.  <u>W. Penn Power Co.</u>, 147 F.3d at 259 (3d Cir. 1998).  "Although a district court may take judicial notice of court documents, it should give both parties an opportunity to respond, at least to ensure that his view of the state proceedings is a complete one."  <u>Gwynedd Properties, Inc. v. Lower Gwynedd Twp.</u>, 970 F.2d 1195, 1206 (3d Cir. 1992).  Here, since Plaintiff appended the Administrative Complaint, his Answer to the Administrative Complaint, as well as various other documents, to his Federal Complaint (Compl. Exs. A – P), this Court will consider those documents in evaluating the motion to dismiss.

individuals for violation of Louisiana Subversive Activities and Communist Control Law was brought in bad faith).  "Bad faith" under the Younger abstention doctrine requires that a prosecution be brought without a reasonable expectation of success.  Perez v. Ledesma, 401 U.S. 82, 85 (1971).  For the district court to find "bad faith," a party must allege something akin to a series of prosecutions brought "with(out) any expectation of securing a valid conviction," or a prosecution brought under a statute "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it."  Williams v. Red Bank Bd. of Ed., 662 F.2d 1008, 1022 (3d Cir. 1981), overruled on other grounds as recognized in Schall v. Joyce, 885 F.2d 101 (3d Cir. 1989), (citing Younger, 401 U.S. at 53-54; Dombrowski, 380 U.S. at 490).

Here, the disciplinary proceeding is based on the statutes and regulations governing the practice of medicine in New Jersey.  Plaintiff does not challenge the validity or constitutionality of these statutes and regulations.  Rather, Plaintiff argues that the Board failed to follow these regulations in bringing the disciplinary action against him.  (See, e.g., Compl. ¶¶ 65, 70.)  For example, Plaintiff contends that the allegation in the Administrative Complaint regarding his violation of record keeping amounts to bad faith prosecution because it was not based on New Jersey law or the substance of medical records cited in the Administrative Complaint.  As a result, according to Plaintiff, the Board invented new standards not in the relevant New Jersey statutes when it filed the Amended Complaint.  (Compl. ¶ 70.)  Plaintiff also contends that the bad faith prosecution was manifested by allegations based on the medical records of only ten patients, none of whom had authorized the transfer of these records.  (Compl. ¶ 65.)

Instead of rising to the level of egregiousness required to demonstrate bad faith, these

challenges are no more than basic arguments challenging the applicability of the New Jersey statutes to Plaintiff, as well as the admissibility of the medical record evidence.  Plaintiff offers no reason why these claims cannot be raised in the normal course of the state proceedings. Essentially, it appears that Plaintiff hopes to defend before this Court the substance of the charges brought against him in the Administrative Complaint.  While Plaintiff may hope and argue that the state has no basis for bringing the Administrative Complaint, Plaintiff makes no claim that the present complaint is part of a pattern of prosecutions that have been unsuccessful in the past.  Further, Plaintiff does not reference any reason why the Board would seek to harass him, or retaliate against him for attempting to exercise a constitutional right.  Absent any factual allegations supporting Plaintiff's claims, this Court need not accept Plaintiff's bald assertion that the Administrative Complaint was brought in bad faith.  Morse, 132 F.3d at 906 n.8.

In fact, the Board is charged with the statutory authority to take disciplinary action against physicians with New Jersey licenses who have engaged in gross malpractice, repeated acts of negligence or professional misconduct. N.J. STAT. ANN. § 45:1-21(c), (d), and (e).  As a result, the Board has not exceeded its authority by simply filing a single disciplinary complaint against Plaintiff.

Furthermore, the allegations in the Administrative Complaint appear on their face to be supported by the State's medical expert, Dr. Bernard Schapiro, who conducted detailed analysis of the various alleged misconducts.  (Ex. C.)  As such, this Court cannot say that there is no factual basis for the disciplinary action.

In his submissions to this Court, Plaintiff presents various arguments to counter the allegations in the Administrative Complaint.  Plaintiff, however, in his Federal Complaint, fails

to articulate "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 127 S. Ct. at 1974. "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" <u>Kost v. Kozakewicz</u>, 1 F.3d 176, 183 (3d Cir. 1993). A plausible claim of relief based on the bad faith exception to the <u>Younger</u> abstention doctrine requires allegations that the charges against the plaintiff were instituted "without any hope of ultimate success." <u>Dombrowski</u>, 380 U.S. at 490. While Plaintiff states that the Administrative Complaint was brought without any hope of success, the allegations in the Federal Complaint do not support this claim. Rather than establishing bad faith, Plaintiff's arguments go to the merits of the state case by challenging the state proceedings and questioning the interpretation and application of the New Jersey statutes to Plaintiff. Plaintiff has not alleged sufficient facts to demonstrate that the disciplinary action was brought "without any hope of ultimate success." None of these arguments establish a bad faith exception to the <u>Younger</u> abstention doctrine. Accordingly, the bad faith exception of the <u>Younger</u> abstention doctrine does not apply here.

### 2. Extraordinary Circumstances Exception Based on Bias

Plaintiff further contends that Defendants "acted collectively, in concert with each other and in conspiracy with each other to violate Plaintiff's due process rights."[10] (Compl. ¶¶ 14, 29)

---

[10] In opposing the motion to dismiss, Plaintiff argues that he is entitled to discovery regarding the extent of the Board's involvement in the alleged witness tampering and the question of whether Dr. Lomazow's conduct was an isolated incident. (Pl.'s Mem. of Law 12.) Plaintiff, however, offers evidence supporting the opposite conclusion – that the Board took no part in the allegedly biased activities of Dr. Lomazow and that Dr. Lomazow's conduct was an isolated incident. (<u>See</u>, <u>e.g.</u>, Ex. J (confirming that no Board members discussed the Getson case with Dr. Lomazow).) Therefore, this Court need not accept Plaintiff's bald assertion that the Board is collectively biased since Plaintiff's own exhibits provide ample support to demonstrate that the Board was not involved in contacting Dr. Talone, and that Dr. Lomazow acted

Plaintiff bases this alleged violation on the conduct of one Board member, Dr. Lomazow. According to Plaintiff, Dr. Lomazow's one telephone call to Plaintiff's expert amounts to witness tampering that constitutes bias tainting the whole Board, as well as the entire state process, even though Dr. Lomazow has been recused from Plaintiff's disciplinary proceeding.  (Compl. ¶¶ 25-42; Exs. G and H).

Concededly, a "fair trial in a fair tribunal is a basic requirement of due process," In re Murchison, 349 U.S. 133, 136 (1955), a tenet that applies to administrative agencies which adjudicate as well as to courts.  Withrow v. Larkin, 421 U.S. 35, 47 (1975) (citing Gibson v. Berryhill, 411 U.S. 564, 579 (1973)).  However, the bar which Plaintiff must reach in order to establish bias that rises to a due process violation is high.  "Without a showing to the contrary, state administrators 'are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.'"  Id. at 55 (quoting U.S. v. Morgan, 313 U.S. 409, 421 (1941)).  "The [Supreme] Court has recognized that not '[a]ll questions of judicial qualification . . . involve constitutional validity.'"  Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 820 (1986).  Courts have identified various situations where the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.  Withrow, 421 U.S. at 46.  For example, in cases where "the adjudicator has a pecuniary interest in the outcome and in which he has been the target of personal abuse or criticism from the party before him," the risk of bias is too high to be constitutionally tolerable.  Id. at 47.

Here, the allegations are not on a par with the cases where the probability of bias has been

independently.

16

inferred.  Rather than alleging that Dr. Lomazow has some basis for being biased against

Plaintiff, the Federal Complaint bases its allegations of bias on one incident[11] – a telephone call

Dr. Lomazow allegedly made to Plaintiff's expert.  The full substance of the allegations

regarding this telephone conversation are contained in paragraph 25 of the Federal Complaint,

which states that "Defendant Lomazow attempted to influence Dr. Tallone [sic] to withhold

information and to refrain from testifying on plaintiff's behalf in plaintiff's administrative license

revocation proceeding.  Defendant Lomazow, a member of the New Jersey Board of Medical

Examiners and its current treasurer, wanted to discuss the complaint against Dr. Getson with Dr.

Tallone [sic], which Dr. Tallone [sic] refused to do.  Defendant Lomazow then made derogatory

remarks to Dr. Tallone [sic] about Dr. Getson and made negative comments about Dr. Tallone

---

[11]  The Federal Complaint also references a telephone call made by an unidentified
lobbyist to Dr. Talone.  (Compl. ¶¶ 30-32.)  The lobbyist allegedly reported to Dr. Talone that a
prominent, unnamed elected official "knew that there was a 'problem between Dr. Lomazow and
Tallone [sic].'"  (Compl. ¶ 31.)  While this Court must assume "that all the allegations in the
complaint are true (even if doubtful in fact)," Plaintiff is required to set forth some factual
allegations that "raise a right to relief beyond the speculative level."  Twombly, 127 S. Ct. at
1965.  Drawing all inferences in favor of Plaintiff, this Court cannot discern how the statements
by an unnamed lobbyist amount to actions attributable to any member of the Board, let alone rise
to the level of supporting an allegation of witness tampering by the Board.  No temporal nexus
exists between the actions of any Board member and the telephone call made by the unnamed
lobbyist.  There is no indication that the lobbyist was prompted to contact Dr. Talone by Dr.
Lomazow or by any other Board member.  In fact, quite to the contrary, according to the
Complaint, the lobbyist "learned of this information during a meeting with the elected official
and that the lobbyist felt that it was important to inform Dr. Tallone [sic] of this 'problem.'"
(Compl. ¶ 31.)  A "problem" between Dr. Lomazow and Dr. Talone could be related to any
number of causes, having nothing to do with Dr. Getson's case.  Given the vagueness of this
allegation, the "problem" between Dr. Lomazow and Dr. Talone could be related to a
neighborhood dispute, a long-standing school rivalry, or an argument about baseball.  Even
assuming a lobbyist called Dr. Talone and reported that an elected official knew about his
problem with Dr. Lomazow, this Court cannot make the leap required to infer this call constitutes
action by any member of the Board.

[sic] himself for serving as an expert in Dr. Getson's case."  (Compl. ¶ 25.)[12]

Dr. Lomazow recused himself from participating in the Getson matter.  (Ex. J.)  The disqualification of those members of a tribunal who may have been biased is a sufficient safeguard for the protection of constitutional due process rights in a state proceeding.  Kugler, 421 U.S. at 127-28.  In Kugler, the plaintiff, a municipal court judge, sought to enjoin the state criminal proceedings against him by asserting that due to "cooperative coercion" by the State Deputy Attorney General and members of the New Jersey Supreme Court, it was impossible for

---

[12]  Plaintiff also alleges that Dr. Lomazow's conduct amounts to witness tampering, thus creating an exception to the Younger abstention doctrine.  This Court cannot infer from the allegations of the Federal Complaint and the exhibits attached to it that Dr. Lomazow's contact with Dr. Talone constituted witness tampering.  Witness tampering generally arises in the criminal context.  In New Jersey, a person commits the offense of witness tampering  "if, believing that an official proceeding or investigation is pending or about to be instituted, he knowingly attempts to induce or otherwise cause a witness or informant to:
(1) Testify or inform falsely;
(2) Withhold any testimony, information, document or thing;
(3) Elude legal process summoning him to testify or supply evidence; or
(4) Absent himself from any proceeding or investigation to which he has been legally summoned."  N.J. STAT. ANN. § 2C:28-5(a).

According to Plaintiff's own allegation, Dr. Talone refused to speak to Dr. Lomazow about Dr. Getson.  (Compl. ¶ 25.)  As a result, Dr. Lomazow simply made derogatory comments about Dr. Getson and negative comments about Dr. Talone.  (Id.)  This one conversation, which neither contained any apparent threats or other forms of intimidation nor demonstrated an attempt to influence Dr. Talone's testimony, does not amount to witness tampering.  Perhaps Dr. Lomazow intended to influence Dr. Talone's testimony, but, since Dr. Talone refused to engage in a conversation with Dr. Lomazow, this Court will never know what Dr. Lomazow intended to say to Dr. Talone. This Court notes that Plaintiff's original attorney, Alma Saravia, stated in a letter to Assistant Attorney General Sharon Joyce, that, following the telephone call from the lobbyist, "Dr. Talone feels intimidated and pressured to cease serving as an expert for Dr. Getson."  (Ex. J.)  As this Court has already mentioned, the connection between the Board and the unnamed lobbyist is too attenuated to allow this Court to infer any connection between the lobbyist's statements and Dr. Lomazow's telephone call. As such, this Court cannot use Dr. Talone's alleged intimidation by the lobbyist to support a claim of witness tampering by Dr. Lomazow or the Board.

him to receive a fair hearing in the state court system.  421 U.S. at 122, 125-26.  The New Jersey

Supreme Court's coercion manifested itself in inappropriate questioning of plaintiff by members

of that court, which resulted in forcing him to testify before a grand jury, in violation of his Fifth

Amendment right.  In rejecting plaintiff's claim, the Supreme Court of the United States found

that it was impossible to conclude from plaintiff's allegations that the objectivity of the entire

New Jersey court system had been irrevocably impaired.  The Court based its decision on the fact

that New Jersey required the disqualification of judges personally interested in a case,  thus

"provid[ing] procedural safeguards to guarantee that [plaintiff] will not be denied due process of

law in the state trial or appellate process."  Id. at 128.

 Here, Dr. Lomazow recused himself from the proceedings, thus safeguarding the integrity

of the disciplinary proceeding.  Even if he had not recused himself, this Court, like the Supreme

Court in Kugler, cannot infer that the impartiality of the New Jersey disciplinary system,

including the entire state court system, has been impaired by the actions of a single member of

the Board.

 Further, all members of the Board planning to attend Dr. Getson's initial hearing in

January 2006, "confirmed that none of them had spoken with Dr. Lomazow with regard to the

substance of the matter then pending before the committee."  (Ex. J.)  As such, this Court cannot

infer that the Board is biased against Dr. Getson.  Rather, the allegations of bias appear to be

"bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal

conclusions cast in the form of factual allegations" that this Court need not accept as true.

Morse, 132 F.3d at 906 n.8.  As such, Plaintiff has failed to state a claim upon which relief can

be granted.

Even if Dr. Lomazow had not recused himself, the bias of one member of a tribunal does not disqualify the remaining members.  Lavoie, 475 U.S. at 824-26.  In Lavoie, the Supreme Court of the United States concluded that, while one justice of the Alabama Supreme Court had a "direct, personal, substantial, [and] pecuniary" interest in the case and therefore should not participate in it, other members of the Alabama court without such interest could still decide the case.  Id.  The Supreme Court of the United States pointed out that the slight and highly speculative pecuniary interest the other Alabama justices might have had in the outcome of the case did not constitute a sufficient basis for requiring recusal under the Constitution.  Id.

Here, there is no allegation that any member of the Board has any interest in the outcome of Dr. Getson's hearing.  Rather, the only possible source of the Board's bias is Dr. Lomazow's potential influence on the other Board members.  Other than Plaintiff's unsupported assertions that Dr. Lomazow has somehow tainted the Board, no allegation exists to indicate how the Board may be biased.

Therefore, Plaintiff has not alleged sufficient facts to demonstrate that the alleged bias of Dr. Lomazow had or will affect the impartiality of the ALJ, the Board, or the judges on the Appellate Division of the Superior Court.  Accordingly, the alleged bias does not rise to the level of an extraordinary circumstance sufficient to justify an exception to the Younger abstention doctrine.

## IV. CONCLUSION

Viewing all the allegations in the Federal Complaint and drawing all reasonable inferences in the light most favorable to Plaintiff, this Court concludes that Plaintiff failed to state a claim upon which relief can be granted in this Court.  Specifically, Plaintiff alleged no

facts that would justify this Court making an exception to the long-standing principles set forth in

Younger v. Harris and its progeny.  That is, Plaintiff failed to allege the existence of bad faith or

any extraordinary circumstances that would establish an exception to the Younger abstention

doctrine.

 For the reasons stated above, application of the Younger abstention doctrine requires the

dismissal of the Plaintiff's Federal Complaint.  Defendants' motion to dismiss under FED. R. CIV.

P. 12(b)(6) shall be granted.

Date: July 31, 2008


       S/Joseph A. Greenaway, Jr.
      JOSEPH A. GREENAWAY, JR., U.S.D.J.